## In Re Anonymous No. 77 D.B. 85

Disciplinary Board Docket No. 77 D.B. 85.

TUMOLO, *Member*, September 26, 1985—Pursuant to the order of the Supreme Court of Pennsylvania dated June 11, 1985, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to respondent's showing of cause for his failure to comply with of the order of the Supreme Court of Pennsylvania dated April 25, 1985.

## I. HISTORY OF PROCEEDINGS

On August 28, 1984, the Office of Disciplinary Counsel (hereinafter petitioner) conducted a hearing on a matter unrelated to this proceeding, but involving [respondent] (hereinafter respondent). The matter being investigated on August 28, 1984 was discharged, but it was found that respondent's trustee account with [ ] Bank and Trust Company of [ ] (Account no. [ ]) was overdrawn on six separate occasions in June of 1983 by as much as $1181.75.

On September 17, 1984, petitioner advised respondent of the six overdrafts on his trustee account and requested that respondent provide his trustee

account bank records and client-account records for the period January 1, 1983 through June 30, 1983, in order to demonstrate that no funds of clients had been misappropriated during that time period. On November 28, 1984, respondent was personally served with a subpoena duces tecum, issued by the Prothonotary of the Supreme Court of Pennsylvania. Respondent was to appear at an investigatory hearing on December 20, 1984, and bring with him the bank records for his trustee account and his client-account records for the period of January 1, 1983 through June 30, 1983. Also subpoenaed for the hearing of December 20, 1984 was the [  ] Bank and Trust Company of [  ], who were directed to provide respondent's bank records for his trustee account for the period January 1, 1983 through June 30, 1983.

At the hearing of December 20, 1984, the [  ] Bank did appear pursuant to the subpoena, and did provide the records requested. Respondent appeared and requested a 30-day continuance which was granted by the hearing committee member in order for respondent to gather the records necessary to comply with the subpoena.

By letter dated January 11, 1985, petitioner advised respondent that a review of the trustee-account records that had been obtained from [  ] Bank revealed that on November 25, 1982, the trustee account had been overdrawn by $82.45. Although the date of this additional overdraft fell outside the period for which the bank records had been subpoenaed (January 1, 1983 through June 3, 1983) the entry had appeared because of the bank's policy of issuing quarterly statements. Because of the additional overdraft, petitioner served respondent on January 15, 1985 with a second subpoena

duces.tecum directing him to appear at an investigatory hearing on February 12, 1985, and bring with him bank records for his trustee account and client-account records that he had maintained from September 1, 1982 through June 30, 1983.

On January 16, 1985, the [ ], Bank was served with a subpoena duces tecum directing them to provide the bank records for respondent's trustee account for the period of September 1, 1982 through December 31, 1982 at the February 12, 1985 investigatory hearing. [ ] Bank provided these records pursuant to the subpoena.

Respondent did not appear at the February 12, 1985 investigatory hearing, and did not provide any of the records in compliance with either of the attached subpoenas. Rather, respondent advised petitioner that he would be filing a motion to quash the subpoena. That motion was never filed.

Petitioner filed before the Supreme Court of Pennsylvania a petition for enforcement of subpoenas, and for an order to compel production of records.

The Supreme Court of Pennyslvania entered an order on April 25, 1985, directing respondent to produce the subpoenaed documents within 10 days of the date of the order.

The subpoenaed documents were not produced within 10 days of the date of the order of April 25, 1985. Rather, on May 6, 1985, respondent filed with the Supreme Court of Pennsylvania a petition to join an indispensable party and/or request for a rule to show cause. This pleading did not request that the subpoena be quashed, and in any event, on June 11, 1985, the Supreme Court of Pennsylvania entered an order denying the petition to join

indispensable party and/or request for a rule to show cause.

On June 11, 1985, the Supreme Court entered an order requiring respondent to show cause why he should not be held in contempt of the order of the Supreme Court of Pennsylvania dated April 25, 1985.

On July 11, 1985, John M. Elliott, Esq., Chairman of the Disciplinary Board of the Supreme Court of Pennsylvania, entered an order designating John A. Tumolo, Esq. as Chairman and John R. McGinley, Jr., Esq. and Byrd R. Brown, Esq. as board members before whom a hearing on the question of respondent's contempt would be held.

A hearing was convened on August 2, 1985, at 11:00 a.m. in the District [   ] Office at which both parties were present. On that date testimony on the issue of cause was taken. The board recessed the hearing in order to give respondent an opportunity to comply with the subpoena by delivering all of the records to petitioner by August 6, 1985, and reporting back to the hearing committee, which reconvened on August 7, 1985 at 12:00 p.m. The reconvened hearing of August 7th shows that the subpoenaed records, to the extent they were available, were delivered by respondent to petitioner on August 6, 1985.

## II. FINDINGS OF FACT

Respondent did not supply to petitioner any of the records identified in the attached subpoenas, nor with any excuse for his failure to supply those records within 10 days of the date of the Supreme Court of Pennsylvania's order of April 25, 1985.

Respondent did not file any legal pleading, nor obtain any relief or extension from the Supreme

Court. of Pennsylvania relating to his obligations to comply with the order of. April 25, 1985.

The hearing of August 2, 1985 before this hearing committee showed that respondent kept no separate ledger card for clients, and thus reassembling an accounting for funds held in trust entailed going back through his cancelled checks, check stubs, and in some cases through closed files. Respondent testified that his law office had been tampered with over the Memorial Day weekend, causing a substantial disarrangement of files which were necessary to the accounting he was attempting to do. However, the Memorial Day weekend was after the time period allowed for compliance with the order of April 25, 1985. In addition, any excuse which might have been appropriate for not supplying the records in a timely manner was not supplied to the Supreme Court in the form of a request for relief from the order of April 25, 1985.

## III. DISCUSSION

The order of the Supreme Court of Pennsylvania dated April 25, 1985 was issued pursuant to the unopposed request of petitioner. The order was properly served upon respondent thereby giving him notice of what he was required to do. Respondent was then faced with the obligation of producing all of the records set forth in the subpoenas, or alternatively, producing those of which he was in possession, and making proper excuse for not producing those unavailable to him.

Respondent did not show any cause for not complying with his obligation. Respondent was always in possession of the records he finally delivered on August 6, 1985. It appears he needed more

time to put those records in order. But he had the first subpoena in his possession since November 28, 1984. Therefore, respondent is in contempt of the order of the Supreme Court of Pennsylvania of April 25, 1985.

Contempt is broken into two categories, civil and criminal. Civil contempt is generally defined as that conduct whereby a court attempts to redress a grievance of a private individual most often by imposing a punishment for an indefinite period of time until the person has purged himself of the contemptuous conduct. Criminal contempt, on the other hand, is for a definite period of time to punish an individual for his disobedience to the directive of the court. Criminal contempt further divides into two species: (1) direct criminal contempt, which occurs by the commission of a contemptuous act in the presence of the court; and, (2) indirect criminal contempt which is an affront to the dignity of the court committed other than in the presence of the court. See generally Philadelphia Marine Trade Assoc. v. International Long Shoreman's Assoc., 392 Pa. 500, 140 A.2d 814 (1958); Simons v. Simons, 232 Pa. Super. 365, 335 A.2d 764 (1975); and, Bruzzi v. Bruzzi, 332 Pa. Super. 346, 481 A.2d 648 (1984).

Petitioner is the Office of Disciplinary Counsel which is invested with the power and duty to investigate all matters involving alleged misconduct of an attorney, and to prosecute those offenses when appropriate. It is not a private petitioner who seeks to redress its own private ends. Rather, the ends are the protection of the public and the integrity of the judicial system. Since the "dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public," respon-

dent's conduct is indirect criminal contempt. Bruzzi, Ibid.

In determining what the punishment should be, a mitigating circumstance should be considered. The hearing board recessed the hearing of August 2, 1985 in order to give respondent, against whom no disciplinary charge has been filed, an opportunity to produce the subpoenaed documents. In a period of three days the respondent complied in a manner which would have probably prevented the necessity of this contempt proceeding. But this mitigates, it does not eliminate the contempt.

Simply put, Disciplinary Rule 9-102(b)(3) requires that lawyers shall:

"Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them." While there is no particular method by which the lawyer is required to account, he is required to be able to make an accounting of entrusted funds at all times. Respondent did not maintain any form of records which would allow him to make this accounting, nor to comply with a subpoena. He did not comply with the subpoena, the order of April 25, 1985, nor did he set forth any legal excuse for failing to comply.

Accordingly, the board enters the following recommendation.

## IV. RECOMMENDATION

That respondent be fined $500; be ordered to pay the costs of this proceeding; and, undergo a public censure by the Supreme Court.

John R. McGinley, Jr. Esq. concurs in the fine and costs, but would impose a private reprimand by the board.

Messrs. Schwartzman, Mundy and Padova did not participate in the adjudication.

## ORDER

NIX, *C.J.*, And now, this December 5, 1985, the recommendation of the Disciplinary Board dated September 26, 1985, is accepted, and it is ordered that [respondent] be fined $500; pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.; and be subjected to public censure by the Supreme Court at the session of court commencing March 3, 1986, in Pittsburgh.